**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | |
| Plaintiff, | Civil Action No.:  6:20-cv-1167-ADA |
| v. | |
| SALESFORCE.COM, INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

<u>**DEFENDANT SALESFORCE'S RULE 12(b)(6) MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    THE '827 PATENT IS INVALID UNDER 35 U.S.C. § 101 ...........................................2

   A.    Legal Standard ...............................................................................................2

   B.    Patent Background ..........................................................................................2

   C.    *Alice* Step One: The '827 Patent Is Directed to the Abstract Idea of Matching Information in Different Databases ...........................................4

   D.    *Alice* Step Two: The '827 Patent Provides No Inventive Concept and Recites Only Generic Steps and Components ...........................................7

   E.    Claim Construction Is Unnecessary To Find Claim 1 Invalid ...............................9

   F.    The Remaining Claims Do Not Alter This Analysis ...........................................10

II.   WSOU'S INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED ...........................................12

   A.    WSOU Cannot Plead Pre-Suit Knowledge ...........................................12

   B.    WSOU Cannot Plead The Requisite Specific Intent for Induced Infringement ...........................................13

   C.    WSOU Cannot Plead The Requisite Lack of Substantial Non-Infringing Uses for Contributory Infringement ...........................................15

III.  CONCLUSION ...........................................16

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336, 1342 (Fed. Cir. 2013)........................................................................ 5

*Achates Reference Pub., Inc. v. Symantec Corp.*,
  2:11-CV-294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013),
  *report and recommendation adopted*, 2:11-CV-294-JRG-RSP, 2013 WL 693885
  (E.D. Tex. Feb. 26, 2013) ........................................................................ 15

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) ........................................................................ 14

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
  No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014)........................ 15

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
  13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ................................. 14

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)........................................................................ 2, 4, 7, 9

*Artrip v. Ball Corp*,
  735 F. App'x 708 (Fed. Cir. 2018) ........................................................................ 16

*Becton, Dickinson & Co. v. Baxter Int'l, Inc.*,
  127 F. Supp. 3d 687 (W.D. Tex. 2015),
  *aff'd*, 639 F. App'x 652 (Fed. Cir. 2016) ........................................................... 10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)........................................................................ 16

*Braemar Mfg., LLC v. ScottCare Corp.*,
  816 F. App'x 465 (Fed. Cir. 2020)........................................................................ 8

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)........................................................................ 7

*Castlemorton Wireless, LLC v. Bose Corp.*,
  No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)............ 12, 13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)........................................................................ 2

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,

859 F.3d 1352 (Fed. Cir. 2017)................................................................................ 9

*CLS Bank Int'l v. Alice Corp. Pty.*,
  717 F.3d 1269 (Fed. Cir. 2013),
  *aff'd*, 573 U.S. 208, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014) ........................................ 2, 11

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015)............................................................................................... 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)................................................................................ 5, 11

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015),
  *report and recommendation adopted*, No. 6:14-CV-751-JRG-JDL,
  2015 WL 13885437 (E.D. Tex. July 15, 2015) ...................................................... 15

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020)................................................................................ 4

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
  558 Fed. Appx. 988 (Fed. Cir. 2014)...................................................................... 10

*D & M Holdings Inc. v. Sonos, Inc.*,
  309 F. Supp. 3d 207 (D. Del. 2018)........................................................................ 6

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)................................................................................ 13

*DietGoal Innovations LLC v. Bravo Media LLC*,
  33 F. Supp. 3d 271 (S.D.N.Y. 2014),
  *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015)................................................................ 7

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020)................................................................................ 9

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)................................................................................ 9

*eResearchTechnology, Inc. v. CRF, Inc*,
  186 F. Supp. 3d 463 (W.D. Pa. 2016)...................................................................... 10

*EResearchTechnology, Inc. v. CRF, Inc.*,
  681 F. App'x 964 (Fed. Cir. 2017)............................................................................ 10

*First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*,
  389 F. Supp. 3d 456 (E.D. Tex. 2019)...................................................................... 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)................................................................................................. 12

*GREE, Inc. v. Supercell Oy*,
    834 F. App'x 583 (Fed. Cir. 2020) ...................................................................... 5, 6

*Inhale, Inc v. Gravitron, LLC*,
    No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ................................ 16

*Intellectual Ventures I LLC v. Capital One Bank, (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)........................................................................ 7

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850 F.3d 1315 (Fed Cir. 2017)..................................................................... 2, 4

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)........................................................... 5, 11, 15

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)............................................................... 14

*Morales v. Square, Inc.*,
    75 F. Supp. 3d 716 (W.D. Tex. 2014),
    *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015) ........................................................ 10

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
    839 F. App'x 520 (Fed. Cir. 2021) ................................................................. 9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)..................................................................... 9

*Parus Holdings Inc. v. Apple Inc.*,
    No. 6:19-cv-00432-ADA, *Text Order Granting D.I.* 54 (W.D. Tex. Feb. 20, 2020)........ 12, 13

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*,
    684 F. App'x 970 (Fed. Cir. 2017) ................................................................ 10

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
    No. 2:15-CV-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016) ........................... 10

*Promotional Techs., LLC v. Facebook, Inc.*,
    No. 3:11-CV-3488-P, 2012 WL 13026789 (N.D. Tex. Sept. 27, 2012).................................. 13

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
    No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ...................... 13, 15

*Semantic Search Techs. LLC v. Aldo U.S., Inc.*,
    425 F. Supp. 3d 758 (E.D. Tex. 2019)............................................................. 11

*Simio, LLC v. FlexSim Software Prod., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)..................................................................... 9

*Telinit Techs., LLC v. Alteva, Inc.*,
   2015 WL 5578604 (E.D. Tex. Sept. 21, 2015) ........................................................ 7

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................ 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ............................................................. 2

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .............................................................. 2

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019) ............................................................. 5

*VLSI Tech., LLC v. Intel Corp.*,
   No. 6:19-cv-00256-ADA, 2019 WL 11025759 (W.D. Tex. Aug. 6, 2019) ..................... 12, 13

*Voip-Pal.com, Inc. v. Apple Inc.*,
   411 F. Supp. 3d 926 (N.D. Cal. 2019) ...................................................... 6

*Whitepages, Inc. v. Isaacs*,
   196 F. Supp. 3d 1128 (N.D. Cal. 2016),
   *aff'd*, 698 F. App'x 613 (Fed. Cir. 2017) .............................................. 6

## Statutory Authorities

35 U.S.C. § 101 ............................................................................. 1

L.R. CV-7(h) .............................................................................. 16

Defendant salesforce.com, inc. ("Salesforce") respectfully requests the Court dismiss the Complaint because U.S. Patent No. 8,369,827 (the "'827 patent") is directed to ineligible subject matter under 35 U.S.C. § 101.  Salesforce further requests, in the alternative, dismissal of Plaintiff WSOU Investments, LLC's ("WSOU")'s induced and contributory infringement claims as inadequate under *Iqbal/Twombly*.

*First,* the '827 patent fails the subject matter eligibility test under Section 101 because it claims the long-practiced abstract idea of matching information that can be used to identify a subscriber to a service ("subscription identifier") with the particular record stored in a repository corresponding to that subscriber ("subscriber record").  The claims do not recite any technological innovation or contain any inventive concept making them patent eligible.  They instead recite generic steps of matching a received identifier and a stored identifier – nothing different than, for example, identifying a particular customer's records based on their phone number or social security number.  The Federal Circuit has time and again affirmed that dismissal of similar mental process claims is proper at the pleading stage.

*Second,* WSOU's indirect infringement allegations are deficient under this Court's basic pleading standards.  The allegations about Salesforce's knowledge—a requisite element of any indirect infringement claim—rest only on the filing of the Complaint itself.  This Court has confirmed that this type of allegation is insufficient to mount an indirect infringement claim, since it does not plead any facts for inference of pre-suit knowledge of the asserted patent.  Also fatal to its allegations is WSOU's failure to allege specific intent for induced infringement and lack of substantial non-infringing uses for contributory infringement.  On each of these separate grounds, the Court should grant Salesforce's motion and dismiss WSOU's claims of indirect infringement.

1

## I.     THE '827 PATENT IS INVALID UNDER 35 U.S.C. § 101

### A.     Legal Standard

Subject matter eligibility under Section 101 is a question of law that may be resolved on a motion to dismiss where no factual allegations exist that, taken as true, prevent resolving eligibility as a matter of law.  *See, e.g.*, *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 764-65 (Fed. Cir. 2019).

Determination of patent eligibility under Section 101 is a two-step process.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  The Court must first determine whether the patent claims are directed to an abstract idea.  *See id.*  Courts "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  If the focus of the claims is a long-standing practice, or a process that could be performed by a human without a computer, then the claims are directed to an abstract idea.  *See Alice*, 573 U.S. at 219.

At *Alice* step two, the court determines whether the claims include an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221.  If the "additional features" described in the claim recite nothing more than "well-understood, routine, conventional activity," the abstract idea is patent-ineligible.  *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1328 (Fed Cir. 2017).  To be patent-eligible, a claim must do "significantly more than simply describe [the] abstract method" and state "apply it."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

### B.     Patent Background

The '827 Patent, entitled "Method of Determining a Unique Subscriber from an Arbitrary Set of Subscriber Attributes," fails to teach or claim any technical improvements.  The '827 patent

describes using a conventional type of repository used in telecommunications networks, called a "subscriber profile repository," or "SPR," that the specification readily admits was already known in the art. '827 at 1:43-45 ("These [3GPP] specifications also mention a Subscriber Profile Repository . . ."). This subscriber profile repository contains a database with records corresponding to individual subscribers using the cellular services. *Id*. at 6:34-35. The subscriber profile repository can be used to identify a particular subscriber profile based on information that uniquely identifies the subscriber (e.g., a number), which is referred to as a "subscription identifier." *Id*. at 7:60-63 More particularly, the SPR matches a subscription identifier to the particular record in the database corresponding to that subscriber and ensures the particular record is unique, such as by ensuring all identifiers used all match only a single record. *Id*., 9:60-10:5. The patent expressly teaches that the subscription identifiers can encompass "any other method of identifying network subscribers known in the art." *Id*., 5:23-27. Accordingly, the request-processing method claimed in the patent amounts to the well-known, back-office activity of matching a received identifier and a stored identifier – activities that can be readily performed using pen and paper.

The '827 patent has 21 claims, of which 3 are independent. Claim 1 is representative of the patent's three independent claims:

> 1. A method performed by a Subscriber Profile Repository (SPR) for determining a unique subscriber record from a set of subscription identifiers, the method comprising:
>
>> receiving a message including at least one subscription identifier; for each subscription identifier of the at least one subscription identifier;
>>
>>> determining whether the subscription identifier matches a subscriber record; and
>>>
>>> determining that the subscriber record is the unique subscriber record when each subscription identifier that matches the subscriber record matches an identical subscriber record.

3

*Id.*, cl. 1.  The patent's dependent claim recite additional generic functionality for this matching technique, such as storing subscriber records in cache (claims 2, 3, 4, 5, 11, 15, 16, 17, 18); returning an error message when unable to find only a single match (claims 3, 6, 7, 19, 20); using particular subscriber identifiers in the LTE standard (claims 8, 13, 21); returning results through a generic results manager (claim 10); and submitting queries through a generic network interface (claim 12).

**C.    *Alice* Step One: The  '827 Patent Is Directed to the Abstract Idea of Matching Information in Different Databases**

The '827 patent's alleged innovation of matching records based on identifiers is an abstract idea.  *See Erie Indemnity Co.*, 850 F.3d at 1327 ("[T]he claimed creation of an index used to search and retrieve information stored in a database is [] abstract.").  The claim achieves this result using generalized steps to carry out generic functions, including receiving a message containing an identifier, comparing that identifier to a database to find a matching record, and confirming that the database record is unique.  *See* '827 patent, cl. 1.  The claims describe no structure for performing these functions, nor do they describe technology "directed to an improvement to the functionality of the [telecommunications] platform itself."  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (invalidating claims that "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem").

A hallmark of abstract ideas, a human can easily perform claim 1 without computer assistance by trying to locate information in any database, such as a pharmacy identifying a patient asking about their prescription based on a phone or social security number:

| '827 Patent Claim 1 | Pharmacy Verifying Identity of a Patient Calling About a Prescription |
|---|---|
| A method performed by a Subscriber Profile Repository (SPR) for determining a unique subscriber record from a set of subscription identifiers, the method comprising: | A patient calls a pharmacy checking on their prescription: |

4

| receiving a message including at least one subscription identifier; for each subscription identifier of the at least one subscription identifier; | The pharmacist receives the call and searches their directory of incoming prescriptions by patient for any matching records based on the patient's phone number or social security number. |
|---|---|
| determining whether the subscription identifier matches a subscriber record; and | The pharmacist confirms the prescription in the directory matches the phone number or social security number provided by the patient. |
| determining that the subscriber record is the unique subscriber record when each subscription identifier that matches the subscriber record matches an identical subscriber record. | The pharmacist confirms that there is only one entry in the directory matching the patient's phone number or social security number. |

Although the specification of the '827 patent purports to apply these steps in the context of a telecommunications system, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). The Federal Circuit has confirmed that the "concept of data collection, recognition, and storage is undisputedly well-known" and that "humans have always performed these functions," such that a claim's requirement to use a computer and a scanner does not change the fact that the "claims are drawn to the basic concept of data recognition and storage." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). Claims directed to the automation of a manual process—such as matching unique identifiers across different databases—are routinely found abstract. *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("[The patent] seeks to automate 'pen and paper methodologies' to conserve human resources and minimize errors. This is a quintessential 'do it on a computer' patent [that is invalid]."); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1339, 1342 (Fed. Cir. 2013) (claims to automated methods for generating task lists were patent-ineligible); *GREE, Inc. v. Supercell Oy*, 834 F. App'x

583, 588 (Fed. Cir. 2020) (claims covering "automation of conventional correspondence chess" invalid); *see also Voip-Pal.com, Inc. v. Apple Inc*., 411 F. Supp. 3d 926, 957 (N.D. Cal. 2019) (holding invalid claim that "provides simple automation of a task previously performed manually"); *D & M Holdings Inc. v. Sonos, Inc*., 309 F. Supp. 3d 207, 214 (D. Del. 2018) (finding claim ineligible that was "directed to the automation of a process that can be (and has been) performed by humans").

Not surprisingly, courts have repeatedly found that claims just like the asserted claims of the '827 patent are abstract. For instance, in *Erie,* the Federal Circuit found that "claims relating to methods and apparatuses that use an index to locate desired information in a computer database" are "drawn to the abstract idea of creating an index and using that index to search for and retrieve data." 850 F.3d at 1325, 1327. As shown below, one of the invalidated representative claims in *Erie* is strikingly similar to—but even less technological than—the claim 1 of the '827 patent:

> 19. A method for **searching a database of information**, comprising the steps of:
> **receiving** a request for information from a client, the request having a first term;
> **identifying a first** XML tag that is **associated** with the first term;
> **determining** whether a first metafile **corresponds** to the first XML tag;
> if the first metafile corresponds to the first XML tag, then transmitting the first XML tag, the first metafile and query code to the client;
> once the client conducts a query by executing the query code using the first XML tag and the first metafile, then receiving query results including a first set of XML tags from the client;
> combining the first set of XML tags into a key;
> **using the key to search the database to locate records** including the first set of XML tags; and delivering the records.
> *Id.* at 1326-27 (emphasis added).

Numerous other courts have likewise recognized that claims directed to matching information based on identifiers are abstract. In fact, another district court has already held that "claims [] directed to [] looking up a name associated with a phone number" are abstract. *Whitepages, Inc. v. Isaacs*, 196 F. Supp. 3d 1128, 1133 (N.D. Cal. 2016), *aff'd*, 698 F. App'x 613 (Fed. Cir. 2017) ("[T]he invention permits users to input a phone number on the web or a mobile

phone app, determine the number's carrier, search the carrier's name database, and return the name associated with the phone number."); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (holding that claim "relate[d] to customizing information based on [ ] information known about the user" was directed to an abstract idea because "information tailoring is 'a fundamental ... practice long prevalent in our system'"); *Telinit Techs., LLC v. Alteva, Inc.*, 2015 WL 5578604, at *17 (E.D. Tex. Sept. 21, 2015) (computer acting as an intermediary for routing and monitoring IP-based communications was "precisely the function of a telephone operator"); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 287 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015) (finding ineligible claims that recite creating lists by retrieving information stored in a database, manipulating data based on user input, making computations from stored data, and displaying the results).

### D.    *Alice* Step Two: The '827 Patent Provides No Inventive Concept and Recites Only Generic Steps and Components

There is no inventive concept contained in the claim limitations of the '827 patent, considered individually or in combination.  The steps of the method claim 1—receiving a message, determining whether an identifier matches the record, and determining whether the record is unique—are generic and routine, as shown above.  '827 patent, cl. 1.  It is black letter law that performing functional steps comprising the abstract idea cannot supply an inventive concept.  *See BSG Tech LLC*, 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept").  Accordingly, simply using conventional networking or computer components to perform this abstract idea, as is the case with the '827 patent claims, cannot yield an inventive concept: "[R]outine data manipulation, which can be performed by a generic computing device," such as the steps of claim 1, "whether considered individually or as an ordered

combination," are "only the implementation of abstract ideas with conventional techniques and do not recite an inventive concept." *Braemar Mfg., LLC*, 816 F. App'x at 470.

Assuming *arguendo* that Plaintiff asserts that the context of the claimed inventions somehow results in an inventive concept, this argument fails. As described in the Specification, the systems that are the subject of the claimed invention comprise nothing more "a telecommunications network or other network for providing access to various services." '827 patent, 3:14-15. With respect to the Subscriber Profile Repository, the Specification concedes that such a repository was well known in the art, being described in various standards' specifications. *Id.,* at 1:43-45. Moreover, as the specification of the '827 patent describes, the SPR is simply as "a device that stores information related to subscribers to the subscriber network." *Id.,* at 4:36-38; *see also id.* at 6:1-4 (SPR client is "hardware and/or executable instructions on a machine-readable storage medium"); *id.* at 6:10-13 (interface is "an interface comprising hardware and/or executable instructions"); *id.* at 6:19-21 (subscriber cache is "any machine-readable medium"); *id.* at 6:34-35 (subscriber database is "any machine-readable medium); *id.* at 6:45-54 (network interface is "any communications network known in the art for transmitting a database query"); *id.* at 6:55-61 (network subscriber database is a "machine-readable storage medium"); *id.* at 7:1-4 (search manager is a "machine-readable storage medium"); *id.* at 7:21-24 (results manager is "machine-readable storage medium").

Accordingly, the mere recitation of a Subscriber Profile Repository does not result in patent eligible subject matter: "[T]he recitation of [] components of a conventional communications system fails to transform the otherwise-abstract processes of requesting, collecting, analyzing, stamping, and transmitting information into a patentable invention." *First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc*., 389 F. Supp. 3d 456, 469 (E.D. Tex. 2019) (dismissing invalid patent). The '827 patents suffers this deficiency – its steps are generic and functional, with no

inventive concept to be found.  As "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information," the claims of the '827 patent fail *Alice* step two.  *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016)*; see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."); *Mortg. Application Techs., LLC v. MeridianLink, Inc*., 839 F. App'x 520, 526 (Fed. Cir. 2021) ("[C]laims that do not define the particular features used to achieve the alleged advantage cannot be said to pass step two of the *Alice* analysis.").

### E.   Claim Construction Is Unnecessary To Find Claim 1 Invalid

The lack of a *Markman* hearing is not an impediment to granting Salesforce's motion. Patent eligibility may be determined even before claim construction if the patentee fails to explain how a term's construction "could affect the analysis."  *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (same); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (explaining that "[the Federal Circuit] ha[s] repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced," and concluding that "it was appropriate for the district court to determine that the [asserted] patents were ineligible under § 101 at the motion to dismiss stage" where the patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis").

In the instant case, there is no construction WSOU can propose to avoid the outcome that the '827 patent is directed to ineligible subject matter.[1]  Terms such as "subscription identifier,"

---

[1]   To the extent WSOU may argue that claim construction is needed, the burden is on WSOU to

"subscriber record," "unique," and "identical" cannot be construed as to imbue claim 1 or any others with an inventive concept nor make it non abstract.[2]  The specification simply states that a "Subscriber profile repository (SPR) may be a device that stores information related to subscribers to the subscriber network."  '827 patent at 4:36-38.  "It is therefore unnecessary to await formal claim construction in order to resolve the issue presented in this motion."  *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016), *aff'd sub nom. Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*, 684 F. App'x 970 (Fed. Cir. 2017) (granting motion to dismiss ineligible claims); *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 722 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015) (same); *see also Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 689 (W.D. Tex. 2015), *aff'd*, 639 F. App'x 652 (Fed. Cir. 2016) (granting summary judgment motion brought before claim construction when "there is no reasonable construction of any term that would bring these claims within the bounds of patentable subject matter").

## F.   <u>The Remaining Claims Do Not Alter This Analysis</u>

The remaining claims do not alter the eligibility analysis and are thus similarly ineligible. Independent claims 9 and 14 are directed to the same subscriber matching techniques as claim 1 and recite substantially the same claim elements.  Claim 9 recites a Subscriber Profile Repository with a generic interface, database, cache, and manager for performing the same method of claim

---

"(1) identify for the Court claims that need to be construed, and (2) explain how construction of such terms could affect the Court's analysis."  *eResearchTechnology, Inc. v. CRF, Inc*, 186 F. Supp. 3d 463, 470 (W.D. Pa. 2016), *aff'd sub nom. EResearchTechnology, Inc. v. CRF, Inc*., 681 F. App'x 964 (Fed. Cir. 2017); *see Cyberfone Sys., LLC v. CNN Interactive Group, Inc*., 558 Fed. Appx. 988, 991 n. 1 (Fed. Cir. 2014) ("Cyberfone argues that claim construction must precede the § 101 analysis, but does not explain which terms require construction or how the analysis would change. It merely points to claim language that we consider here. There is no requirement that the district court engage in claim construction before deciding § 101 eligibility.").

[2]    Likewise, regardless of whether the preamble of claim 1 were to be found limiting, no construction would rescue the abstract idea embodied in claim 1.

1, and claim 14 merely adds a "non-transitory machine-readable storage medium" with "instructions for" the exact steps of claim 1.  Claim 9's additional generic hardware elements do not rescue the claim, nor do claim 14's more minimal contributions.  *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1288 (Fed. Cir. 2013), *aff'd*, 573 U.S. 208, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014) (Judge Lourie concurring) (noting generic computer device claims are "merely method claims in the guise of a device" and "do not overcome the Supreme Court's warning to avoid permitting 'competent draftsmen' to endow abstract claims with patent-eligible status."); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)(generic language directed at providing "instructions for" a "non-transitory machine-readable storage medium" does not suffice to confer eligibility).

The dependent claims also fail to include limitations beyond the abstract idea encompassed in the independent claims.  *Semantic Search Techs. LLC v. Aldo U.S., Inc*., 425 F. Supp. 3d 758, 772–73 (E.D. Tex. 2019) (dependent claims which do not "introduce any substantially different allegations for limitations or inventive concepts" are still  directed to the abstract idea of the independent claim).  They simply recite additional generic functions, such as storing subscriber records in cache (claims 2, 3, 4, 5, 11, 15, 16, 17, 18); returning an error message when unable to find only a single match (claims 3, 6, 7, 19, 20); using particular subscriber identifiers in the LTE standard (claims 8, 13, 21); returning results through a generic results manager (claim 10); and submitting queries through a generic network interface (claim 12).  There is nothing in these dependent claims that "foreclose them from being performed by a human, mentally or with pen and paper."  *Symantec Corp*., 838 F.3d at 1318; *Content Extraction*, 776 F.3d at 1348 (dependent claims that may have a narrower scope than the representative claims were not patent-eligible, because "all of the additional limitations in the claims...recite well-known, routine, and conventional functions.").

Nor is there any inventive concept to any of the dependent claims. The cache recited in several dependent claims is entirely generic computer memory, made of "any machine-readable medium capable of storing subscriber records," '827 6:19-20. The claimed network interface, results manager, and network interface likewise add nothing beyond generic off-the-shelf components. Finally, the recited error message and identifier dependent claims do not even include any additional "computer, network, or display components" to support an inventive concept that would transform the underlying abstract concept. *Alstom*, 830 F.3d at 1355.

## II. WSOU'S INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

### A. WSOU Cannot Plead Pre-Suit Knowledge

Both induced and contributory infringement "require[] knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011) (indirect infringement requires "knowledge of the existence of the patent that is [allegedly] infringed" and "knowledge that the induced acts constitute patent infringement."). With respect to the knowledge requirement, this Court has repeatedly held that failure to plead any facts supporting an allegation of pre-suit knowledge of the asserted patent should result in the dismissal of a plaintiff's indirect infringement claims. *See Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020); *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-00432-ADA, *Text Order Granting D.I.* 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims where plaintiff's only allegation of knowledge was that "Defendant Apple has had knowledge of the '431 Patent since at least the filing of the original complaint" and "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement" (D.I. 28 (Am. Compl.) at ¶ 44)); *VLSI Tech., LLC v. Intel Corp.,* No. 6:19-cv-00256-ADA, 2019 WL 11025759, *1-2 (W.D. Tex.

Aug. 6, 2019) (dismissing indirect infringement claims with no allegation of actual knowledge and insufficient facts to support allegations of willful blindness).

Like the complaints in the *Castlemorton*, *Parus Holdings*, and *VLSI* cases, the Complaint in this case fails to allege any facts for the Court to reasonably infer that Salesforce had pre-suit knowledge of the '827 patent. Indeed, the Complaint only alleges that "Salesforce has received notice and actual or constructive knowledge of the '827 patent since at least the date of service of this Complaint" (Dkt. 1, ¶ 20), and thus does not establish that Salesforce had any pre-suit knowledge of the '827 patent. Accordingly, the Court should dismiss WSOU's indirect infringement claims.

**B.     WSOU Cannot Plead The Requisite Specific Intent for Induced Infringement**

WSOU also fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, directed to encouraging another's infringement, *not merely that the inducer had knowledge of the direct infringer's activities*.'" *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *3 (E.D. Tex. June 28, 2016) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)) (emphasis added); *see also Promotional Techs., LLC v. Facebook, Inc.*, No. 3:11-CV-3488-P, 2012 WL 13026789, at *5 (N.D. Tex. Sept. 27, 2012) (dismiss inducement claims where plaintiff's "Original Complaint does not contain any allegations of the Defendants' specific intent to induce or active steps to encourage another's infringement" because "[a] patentee must provide factual allegations in support of the elements of inducement that have some evidentiary support.").

WSOU's allegations of specific intent amount to a conclusory statement that Defendant "actively induced" others to infringe through its advertising and promotional materials and some website citations:

21. Since at least the date of service of this Complaint, through its actions, Salesforce has actively induced product makers, distributors, retailers, and/or end users of the Accused

13

Products to infringe the '827 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://resources.docs.salesforce.com/224/latest/en-us/sfdc/pdf/customer360.pdf
- https://www.salesforce.com/blog/2018/09/what-is-salesforce-customer-360.html
- https://resources.docs.salesforce.com/224/latest/en-us/sfdc/pdf/icx_c360exp_retail.pdf

*See* Dkt. 1, ¶ 21. These conclusory allegations fail to present any facts demonstrating: (1) Salesforce knew that the alleged acts infringed, and (2) Salesforce knew that the promotion of its products would induce or encourage others to infringe the asserted patent. *See Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement.").

In *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, this Court found that "Plaintiffs generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are . . . insufficient" for an induced infringement claim (*see* No. W:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014)) where Plaintiffs alleged that "Toyota and/or its distributors or representatives have sold or otherwise provided Toyota automobiles with sound systems—including at least, for example, the Toyota Tundra—to third parties, such as Toyota's customers" (*see id.,* Dkt. 1, ¶¶ 36, 47 (Nov. 21, 2013). Similarly, here, WSOU's allegations listing the marketing and promotional websites for the accused product are similarly insufficient to show that Salesforce had specific intent to induce its customers to infringe. *See MONEC Holding AG v. Motorola Mobility, Inc*., 897 F. Supp. 2d 225, 234 (D. Del. 2012) ("Allegations of the marketing activities of the Defendants do not, on their own, demonstrate that

Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement."); *see also Affinity Labs of Texas, LLC v. Blackberry Ltd*., No. W:13-CV-362, 2014 WL 12551207, at *6 (W.D. Tex. Apr. 30, 2014) (dismissing induced infringement allegations where "Plaintiff does not specify how the marketing and selling activities of [Defendant] actually induced third-parties to infringe the [asserted patent]."); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015), report and recommendation adopted, No. 6:14-CV-751-JRG-JDL, 2015 WL 13885437 (E.D. Tex. July 15, 2015) ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim."); *compare with Achates Reference Pub., Inc. v. Symantec Corp*., 2:11-CV-294-JRG-RSP, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013) report and recommendation adopted, 2:11-CV-294-JRG-RSP, 2013 WL 693885 (E.D. Tex. Feb. 26, 2013) (noting that since the defendant's software required its customers to complete a mandatory activation step to use its products, thereby utilizing plaintiff's patent, the court could reasonable infer induced infringement since the plaintiff included allegations beyond the mere purchase and usage of a product by a third person).

Moreover, Plaintiff's allegations also fail to provide any specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—*i.e.*, "evidence of culpable conduct, directed to encouraging another's infringement." *Ruby Sands*, 2016 WL 3542430, at *3. WSOU's inducement claim should also be dismissed on this separate basis, as the Complaint is entirely deficient on this critical requirement of induced infringement.

C. **WSOU Cannot Plead The Requisite Lack of Substantial Non-Infringing Uses for Contributory Infringement**

WSOU's contributory infringement allegations also fail because WSOU did not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-

infringing uses." *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *2 (W.D. Tex. Dec. 10, 2018) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1344–46 (Fed. Cir. 2012)).   WSOU has not done so and cannot do so. WSOU's allegations amount to little more than a conclusory statement that repeats the legal elements.   For the instant action, WSOU alleges that:

> 22. Since at least the date of service of this Complaint, through its actions, Salesforce has contributed to the infringement of the '827 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '827 Patent. The Accused Products are especially made or adapted for infringing the '827 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '827 Patent..

*See* Dkt. 1, ¶ 22. As the Federal Circuit held in *Artrip v. Ball Corp*, conclusory allegations such as these are not enough.   735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use").   WSOU's failure to raise a plausible inference of no substantial noninfringing uses and materiality is fatal to its contributory infringement claim, and as such it should be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Salesforce respectfully requests that the Court dismiss WSOU's complaint.   Pursuant to L.R. CV-7(h), Salesforce requests an oral hearing on the foregoing motion.

DATED: May 6, 2021                        Respectfully submitted,


                                          By ___*/s/ Kevin P.B. Johnson*_____
                                             Scott L. Cole
                                             scottcole@quinnemanuel.com
                                             Quinn Emanuel Urquhart & Sullivan, LLP
                                             201 West 5th Street
                                             11th Floor
                                             Austin, TX 78701
                                             Telephone: (737) 667-6104

                                             Kevin P.B. Johnson
                                             kevinjohnson@quinnemanuel.com
                                             Todd Briggs
                                             toddbriggs@quinnemanuel.com
                                             Quinn Emanuel Urquhart & Sullivan, LLP
                                             555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
                                             Telephone: (650) 801-5000
                                             Facsimile: (650) 801-5100

                                             Sam Stake
                                             samstake@quinnemanuel.com
                                             Quinn Emanuel Urquhart & Sullivan, LLP
                                             50 California Street, Floor 22,
                                             San Francisco CA 94111
                                             Telephone: (415) 875-6600
                                             Facsimile: (415) 875-6700

                                             *Attorneys for Defendant salesforce.com, inc.*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on May 6, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated:  May 6, 2021                            */s/ Scott L. Cole*                                      
                                                        Scott L. Cole