IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § § | CIVIL ACTION 6:20-CV-1167-ADA |
| Plaintiff, | § § | PATENT CASE |
| v. | § § | |
| SALESFORCE.COM, INC., | § § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**RESPONSE OPPOSING SALESFORCE'S RULE 12(b)(6) MOTION TO DISMISS**

**INTRODUCTION**

The Court should deny Salesforce.com, Inc.'s ("Salesforce") motion to dismiss under § 101 as premature and as raising disputed issues of material fact, which preclude granting a motion on the pleadings. Given the futility of the motion, however, the Court may be inclined to consider the motion on the merits, even if only to deny the motion *with prejudice* and thereby avoid unnecessary briefing and expenditure of Court resources later (*e.g.*, sometime after claim construction is complete and discovery has open). Accordingly, and notwithstanding the early stage of the litigation, example fatal deficiencies of the merits of the eligibility challenges are identified herein.

There is also no merit to Salesforce's motion to dismiss WSOU's indirect infringement claims. First, WSOU need not allege "pre-suit knowledge," as Salesforce erroneously insists, because WSOU's indirect-infringement claims seek damages only for post-suit indirect infringement. Second, WSOU's detailed allegations are more than sufficient to allege (a) the specific intent required for induced infringement and (b) a substantial non-infringing use required for contributory infringement. The complaints in the cases on which Salesforce relies bear no resemblance to WSOU's detailed complaint.

**OVERVIEW OF THE '827 PATENT**

The United States Patent and Trademark Office duly issued U.S. Patent No. 8,369,827 ("the '827 patent") in full compliance with Title 35 of the United States Code. Various embodiments of the '928 patent are generally directed toward technical improvements to a Subscriber Profile Repository (SPR). Among other technical deficiencies of the art, the '827 patent states certain conventional approaches "do not specify any details associated with the Sp reference point" and further "do not specify the SPR's relation to any existing subscriber data base." *Id*. at 1:49–56. The '827 patent further recognizes that the art failed, for example, to provide a "method for processing requests to the SPR" and "a system that can quickly resolve" such requests, where the "system . . . is interoperable with different network devices and messages." *Id*. at 1:57–62; *see also id*. at 1:66–2:1 (recognizing a "present need for an SPR that is interoperable with different

network devices that can quickly resolve requests"). The '827 patent characterizes certain embodiments disclosed therein as addressing these and other example deficiencies of the art.

Claim 1 of the '827 patent is reproduced below:

> 1. A method performed by a Subscriber Profile Repository (SPR) for determining a unique subscriber record from a set of subscription identifiers, the method comprising:
>
> receiving a message including at least one subscription identifier; for each subscription identifier of the at least one subscription identifier;
>
> determining whether the subscription identifier matches a subscriber record; and
>
> determining that the subscriber record is the unique subscriber record when each subscription identifier that matches the subscriber record matches an identical subscriber record.

'827 patent, 11:51–62 (claim 1).

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 3 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *ESW*, *2 (citations and internal quotations omitted). "A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Id*. (citations and internal quotations omitted). "In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief." *Id*. (citations omitted); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

A properly issued patent is entitled to a presumption of validity, which extends to subject matter eligibility, and which can only be overcome by clear and convincing evidence. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-CV-00044-ADA, 2019 WL 10303653, at *2 (W.D. Tex. May 13, 2019) (*ESW*). Further, nothing in the Supreme Court's opinion in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014)

2

(*Alice*), or in any other judicial opinion, has changed the traditional Rule 12 standards in any way. The Court must draw all reasonable inferences in favor of the non-movant and view all facts in the light most favorable to the non-movant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

**ARGUMENT**

**I.     Salesforce's § 101 eligibility challenge should be denied.**

**A.     Salesforce's § 101 eligibility challenge should be denied as premature.**

Under the applicable standards, the patent-eligibility challenges of the motion should be denied; and the circumstances warrant denial *with prejudice*.

The Federal Circuit has instructed that "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction *disputes* prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."). The Circuit has further instructed that claim construction can itself affect a § 101 analysis. *See*, *e.g.*, *Aatrix,* 882 F.3d at 1128.

Citing the above authority, this Court stated its "general practice is to defer resolving § 101 related Rule 12(b) motions until after claim construction and after fact discovery opens." *VideoShare, LLC v. Google LLC*, No. 6-19-CV-00663-ADA, 2020 WL 6365543, at *5 n.2 (W.D. Tex. May 4, 2020) (citing the reasoning in *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1206 (W.D. Tex. 2019), *reconsideration denied*, No. W-19-CV-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020) (*Slyce*)). Applying the Court's general practice to the present facts, the motion can and should be denied as premature. *Id*. This is at least because

3

(1) claim construction disclosures and subsequent briefing have not even begun in this matter, and (2) fact discovery has yet to open.

Ignoring the Court's clear articulation of its general practice, Salesforce attempts to shift *its* burden to WSOU. Mot. 9–10 n.1 (citation omitted). Citing only *non-precedential* authority, Salesforce incorrectly suggests the burden rests with WSOU to "(1) identify for the Court claims that need to be construed, and (2) explain how construction of such terms could affect the Court's analysis." *Id*. WSOU has no such burden here. Salesforce not only improperly attempts to shift its burden, but it also ignores, and does not deny, that its motion is premised on undefended factual assertions and claim interpretations. For example, Salesforce offers the conclusory assertion that "the request-processing method claimed in the patent amounts to the well-known, back-office activity of matching a received identifier and a stored identifier – activities that can be readily performed using pen and paper." Mot. 3; *cf. Berkheimer*, 881 F.3d at 1369 ("Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination."). Salesforce also offers the undefended assertions that the steps of claim 1 merely recite "generic functions" and that "[t]he patent's dependent claim recite additional generic functionality." Mot. at 4.

Compounding its error, Salesforce overgeneralizes its undefended characterization of claim 1 as allegedly representative of all the patentably-distinct claims 2–21 of the '827 patent. *Id*. at 10 ("The remaining claims do not alter the eligibility analysis and are thus similarly ineligible."). Indeed, Salesforce underscores the premature nature of its motion by raising undefended *factual* assertions, such as, for example, that the remainder of the claims 2–21 merely recite "generic hardware" or "generic functions." *Id*. at 10–11.

### B.  Salesforce's § 101 Eligibility Challenge is Deficient on the Merits.

Given Salesforce's motion is premature, for the reasons explained above, the Court need not presently consider the merits of Salesforce's challenge to the presumptive subject-matter eligibility of the duly issued '827 patent. Nevertheless, the Court may be inclined to consider the

motion on the merits, if only to deny the motion *with prejudice* and thereby avoid unnecessary briefing, at a later date, on what is clearly a futile theory of ineligibility.

In *Alice*, the Supreme Court articulated a two-step framework "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. A court must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts" stated above. *Id*. If so, the court then moves to the second step: determining whether the additional elements of each claim represent an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id*. at 221. As an independent basis for denial *with prejudice*, Salesforce fails at the first step to establish any claim is directed to an abstract idea. While such failure renders the second step unnecessary, yet another independent basis for denial *with prejudice* is that Salesforce also fails to establish the lack of an inventive concept.

### 1. Salesforce fails to prove claim 1 is directed to an abstract idea.

Salesforce's motion fails, under the first step of the *Alice* analysis, as lacking undisputed, clear, and convincing evidence proving that claim 1 is directed to an abstract idea. "The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854)). As the Court is aware, it "'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *Id*. at 1313 (quoting *In re TLI Communications LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). Thus, "a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps," and determine "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id*. at 1313-14. During step one of the *Alice* analysis, it is crucial to "articulate what the claims are directed to with enough specificity to ensure the step

one inquiry is meaningful," because all patents "embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017); *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).

Contrary to the above authority, Salesforce grossly overgeneralizes claim 1 as allegedly being directed to "the abstract idea of matching information in different databases." Mot. 4. Salesforce's contrived abstraction should be rejected as (1) being untethered to what claim 1 actually recites and (2) overlooking what the '827 patent asserts are specific improvements to computer operation achieved by claimed teachings of the patent.

Salesforce's untethered abstraction ("matching information in different databases") does not even account for certain context and elements recited in the preamble of claim 1 as follows: "[a] method *performed by a Subscriber Profile Repository (SPR)* for determining *a unique subscriber record* from *a set of subscription identifiers*." '827 patent, 11:51–53 (claim 1). The preamble makes clear that claim 1 is not fairly characterized as being directed to merely generating a "matching information in different databases" in the abstract, as Salesforce argues, much less doing so "without computer assistance." Mot. 4. Rather, at a minimum, the recited elements "Subscriber Profile Repositor (SPR)," "unique subscriber record," and "a set of subscription identifiers," coupled with the requirement that the method must be "*performed*" by the "Subscriber Profile Repository," confirm Salesforce's contrived abstraction is untethered to what claim 1 actually recites. Indeed, it is telling that Salesforce's untethered abstraction completely ignores the technical term "Subscriber Profile Repository (SPR)"—i.e., the very element identified as performing the method of claim 1. Salesforce, instead, attempts to recast claim 1 is being directed to "matching information *in different databases*" (in the plural).

In addition, Salesforce's untethered abstraction impermissibly ignores requirements of individual steps recited in the body of claim 1. For example, claim 1 recites the "method performed by a Subscriber Profile Repository (SPR)" involves (among other recited requirements) "receiving a message including at least one subscription identifier," "determining whether the subscription

6

identifier matches a subscriber record," and "determining that the subscriber record is the unique subscriber record" under certain recited conditions. '827 patent, 11:54–62 (claim 1). These specific steps of claim 1, performed by a Subscriber Profile Repository (SPR) in "determining a unique subscriber record from a set of Subscription identifiers," cannot fairly be reduced to merely "matching information in different databases" in the abstract, as Salesforce argues.

Salesforce's untethered abstraction of claim 1 also overlooks what the '827 patent asserts are example improvements to network computing achieved by certain embodiments. The specification of the '827 patent contains statements, which must be taken as true at the pleading stage, and which underscore that the '827 patent claims patent-eligible improvements that address technical problems in the art. Among other technical deficiencies of the art, for example, the '827 patent states certain conventional approaches "do not specify any details associated with the Sp reference point" and further "do not specify the SPR's relation to any existing subscriber data base." *Id*. at 1:49–56. The '827 patent further recognizes that the art failed, for example, to provide a "method for processing requests to the SPR" and "a system that can quickly resolve" such requests, where the "system . . . is interoperable with different network devices and messages." *Id*. at 1:57–62; *see also id*. at 1:66–2:1 (recognizing a "present need for an SPR that is interoperable with different network devices that can quickly resolve requests"). The '827 patent, therefore, characterizes the disclosure contained therein as providing as *technical improvements* in network computing capabilities, particularly in the context of an improved Subscriber Profile Repository (SPR).

The '827 patent claims subject matter analogous to what the Federal Circuit has previously held to be patent eligible. The Federal Circuit has instructed that "[i]n cases involving software innovations, [the step one inquiry of *Alice*] often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018) (citations and internal

quotations omitted). *Ancora* favorably cited *Enfish*[1] as holding "that the patent claims at issue were not directed to an abstract idea because the claimed self-referential tables improved the way that computers operated and handled data." *Id*. (citing *Enfish*, 822 F.3d at 1333, 1336). *Ancora* observed the Circuit has frequently cited *Enfish* and similar cases in finding that claims directed to an asserted improvement in computer capabilities pass muster under *Alice* step one. *Id*. (citing, *inter alia*, *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1304–05 (Fed. Cir. 2018), *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018), and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017)). *Ancora* also emphasized the holding in *Visual Memory* that "a specific improvement in computer memory" is patent eligible. *Id*. (citing *Visual Memory*, 867 F.3d at 1262). The claims at issue in *Visual Memory* were "limited to certain types of data to be stored" and thus were not fairly characterized as directed merely to the abstract concept of categorical data storage. *Id*.

The claim language and technical improvements at issue here are analogous to what was at issue in *Ancora* and in the opinions discussed therein (*e.g.*, *Enfish* and *Visual Memory*). As discussed above, claim 1 of the '827 patent expressly limits the method "performed by a Subscriber Profile Respositroy (SPR)" with steps involving (among other recited requirements) "receiving a message including at least one subscription identifier," "determining whether the subscription identifier matches a subscriber record," and "determining that the subscriber record is the unique subscriber record" under certain recited conditions. '827 patent, 11:54–62 (claim 1). The specific requirements, recited in claim 1, for *how* a unique subscriber record is determined from a set of subscription identifiers cannot fairly be characterized as being directed to merely "matching information in different databases" abstract. Moreover, as discussed above, the '827 patent self-describes the claimed inventions (including claim 1) as providing technical improvements which enable functionality not achievable by the prior approaches discussed therein. This falls squarely within what the Federal Circuit has identified as passing muster under step one of *Alice*.

---

[1] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

Salesforce fails to establish a different outcome is warranted here under the distinguishable facts of *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017). There, in analyzing the claims at issue under step one of *Alice*, the court found "[t]he claims are not focused on *how* usage of the XML tags alters the database in a way that leads to an improvement in the technology of computer databases, as in *Enfish*." *Id*. (emphasis original). Here, by contrast, the claim 1 recites limitations directed to *how* the Subscriber Profile Repository (SPR) "determine[es] a unique subscriber record from a set of subscription identifiers"—e.g., including by "determining that . . . each subscription identifier that matches the subscriber record matches an identical subscriber record." '827 patent, 11:59–62 (claim 1).

### 2. Salesforce fails to prove claim 1 recites nothing more than the alleged abstract idea.

Because Salesforce failed to meet its burden under the first step of the *Alice* analysis, there is no need to consider the merits of the eligibility challenge under step two of the analysis. *Versata Software, Inc. v. Zoho Corp.*, No. A-13-CA-00371-SS, 2015 WL 6506368, at *3 (W.D. Tex. Oct. 26, 2015) (finding that because the claim language at issue "does not embody an impermissibly abstract idea, . . . the Court need not determine whether the claims at issue contained an inventive concept sufficient to transform the allegedly abstract idea into patent-eligible subject matter."). Scrutiny of the motion under step two of *Alice*, however, only further underscores additional deficiencies. Salesforce failed to meet *its* burden to prove that claim 1 lacks an inventive concept.

Salesforce's arguments to the contrary, at best, raise disputed issues of material fact, which, according to *Berkheimer*[2] and *Aatrix*,[3] preclude granting a motion on the pleadings. For example, Salesforce offers the conclusory argument that claim 1 recites nothing more than "generic and routine" steps. Mot. 7. Salesforce also falsely asserts that the '827 patent concedes the SPR recited in claim 1 "was well known in the art." *Id*. at 8. These disputed issues of fact independently warrant denial under controlling authority. *See*, *e.g.*, *Berkheimer*, 881 F.3d at 1369 ("Whether

---

[2] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018).
[3] 882 F.3d at 1125.

9

something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination.").

Citing both *Berkheimer* and *Aatrix*, this Court explained that even if it were to agree "that the asserted claims were directed to an abstract idea," denial would still be warranted where, for example, the record "establishes problems of the prior art and the . . . claimed invention's manner of solving those problems." *eCeipt LLC v. Homegoods, Inc.*, No. W-19-CV-00032-ADA, 2019 WL 10302271, at *6–7 (W.D. Tex. May 20, 2019). Thus, it is also independently fatal to Salesforce's motion that the '827 patent self-asserts its disclosure teaches example technical solutions to previously unresolved problems in the art, including in the context of SPR applications. '827 patent, 1:49–62. For example, as explained above, the '827 patent identified certain deficiencies in the art as including the failure to (1) "specify any details associated with the Sp reference point," (2) "specify the SPR's relation to any existing subscriber data base," and (3) provide a "method for processing requests to the SPR" and "a system that can quickly resolve" such requests, where the "system . . . is interoperable with different network devices and messages." *Id*. at 1:49–62; *see also id*. at 1:66–2:1 (recognizing a "present need for an SPR that is interoperable with different network devices that can quickly resolve requests"). The '827 patent describes embodiments disclosed therein as addressing these and other technical deficiencies in the art. *See*, *e.g.*, *id*. at 1:66–2:54. Salesforce's unsupported *factual* assertion that claim 1 of the '827 patent recites nothing more than what was "generic and routine" at the time flies in the face of *both* what the patent expressly asserts *and* the factual allegations of the pleadings.

Salesforce also fails to prove, by clear and convincing evidence, that claim 1 lacks any inventive concept and, rather, requires nothing more than merely "matching information in different databases" in the abstract. The preamble of claim 1 recites that the method is "performed by a Subscriber Profile Repository (SPR) for determining a unique subscriber record from a set of subscription identifiers." After reciting "receiving" and "determining" steps, the body of claim 1 refers back to the preamble by further reciting an additional "determining" step as follows: "determining that the subscriber record is *the unique subscriber record* when each subscription

identifier that matches the subscriber record matches an identical subscriber record." Thus, the body of claim 1 recites inventive concepts which, when viewed as an ordered combination, meaningfully limit *how* the "Subscriber Profile Repository (SPR)" must determine "a unique subscriber record from a set of subscription identifiers." These specific requirements of claim 1 cannot be fairly reduced to requiring nothing more than "matching information in different databases" in the abstract, as Salesforce argues. Because Salesforce has filed to establish that claim 1 lacks any inventive concept, the *presumption* of eligibility stands unrebutted.

### 3. Salesforce has not overcome the presumption of eligibility for the remainder of the claims.

For the remainder of the claims 2−21 of the '827 patent, Salesforce alleges that their respective and distinct limitations "do not alter the eligibility analysis and are thus similarly ineligible." Mot. 10. Taking Salesforce at its word, its cursory attempt to invalidate distinct claim language recited in *twenty* different claims fails for at least the reasons set forth above (in addressing Salesforce's woefully deficient challenge of claim 1). Specifically, for analogous reasons, the challenge of the remainder of the claims should be denied as (1) premature, or otherwise (2) failing to address each claim individually to establish it is directed to an abstract idea and (3) failing to address each claim individually as lacking a sufficiently inventive concept.

Under step one of *Alice*, Salesforce argues that "[Independent claims 9 and 14 are directed to the same subscriber matching techniques as claim 1 and recite substantially the same claim elements." Mot. 10. It is curious that Salesforce states the analysis for the remainder of the claims does not change, yet Salesforce recognizes that claim 9 recites distinct elements not recited in claim 1, such as "an *interface*," "a subscriber record *database*," "a subscriber record *cache*," and "a *search manager*." Mot. 10. Salesforce then injects issues of fact, which are independently fatal to its motion, in asserting these elements are merely "generic hardware elements." *Id*. at 11. Salesforce's motion offers no analysis unique to the limitations of claim 14 and thus Salesforce's eligibility challenge of claim 14 (and its dependent claims) should be denied at least for those reasons set forth above concerning claim 1.

Because Salesforce failed to meet its burden under the first step of the *Alice* analysis for independent claims 9 and 15, there is no need to consider the merits of the eligibility challenge under step two of the analysis. *Versata Software,* 2015 WL 6506368, at *3. Nevertheless, Salesforce's analysis of those claims is tainted by deficiencies analogous to those explained above concerning claim 1. For example, at a minimum, Salesforce again overlooks that the record "establishes problems of the prior art and the . . . claimed invention's manner of solving those problems." *eCeipt LLC,* 2019 WL 10302271, at *6–7.

Salesforce's failure to overcome the presumption of eligibility for *any* independent claim is *itself* fatal to Salesforce's eligibility challenge of each dependent claim. As an additional basis for denial, this Court has recognized "in the context of a § 101 analysis, the *additional* limitation" of a dependent claim may individually, or in conjunction with other claim limitations, recite a sufficiently transformative inventive concept. *VideoShare,* 2020 WL 6365543, at *7. Thus, each dependent claim requires individual scrutiny of each limitation individually, and as an ordered combination with each other limitation, to satisfy a movant's burden to overcome the presumption of eligibility by clear and convincing evidence. This Salesforce failed to do.

At most, Salesforce merely offers conclusory assertions that its *own* paraphrasing of cherry-picked claim language recited in certain dependent claims lacks a sufficiently inventive concept. Salesforce also defeats its own motion by injecting *additional* factual disputes concerning the dependent claims. For example, Salesforce asserts the additional limitations recited in the dependent claims require nothing more than "generic off-the-shelf components." Mot. at 12.

**II.** **Salesforce's motion to dismiss WSOU's indirect infringement claims should be denied.**

    **A.** **WSOU need not allege "pre-suit knowledge" to support an indirect infringement claim that (a) accrued during litigation and (b) seeks only post-suit damages.**

WSOU need not allege "pre-suit knowledge" to support an indirect infringement claim that accrued during litigation and seeks only post-suit damages. The Federal Circuit has never held that a cause of action for indirect infringement must be based on "pre-suit" knowledge or that a party

is barred from asserting an indirect infringement claim seeking only post-suit damages. To the contrary, the Federal Circuit has repeatedly recognized that a party "***may seek to pursue claims that accrue during the pendency of a lawsuit[.]***" *See e.g., Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed.Cir.2012) (emphasis added). Indirect infringement is a cause of action. As a cause of action, it may accrue during the pendency of a lawsuit, and if it does, a plaintiff should be allowed to pursue it. *Id.* To hold otherwise is to ignore clear Federal Circuit precedent. *See id.*

While some district court opinions have erroneously embraced the "pre-suit knowledge rule," there are compelling reasons to reject it. To the extent this Court considers its decisions in *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020) or *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020) to embrace the "pre-suit knowledge rule," WSOU respectfully urges this Court to reconsider.

The most compelling and basic reason to reject the "pre-suit knowledge rule" is the well-established rule, stated above, that a party "may seek to pursue claims that accrue during the pendency of a lawsuit[.]" *Id.* The "pre-suit knowledge rule" (erroneously accepted only by some district courts) violates this well-established rule (repeatedly recognized by higher courts).

Salesforce relies, in part, on *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011), but *Aguirre* relies on a Delaware case (*Xpoint*) that has since been rejected by several Delaware courts.[4] In *Walker Digital*, for example, the Court stated:

> The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post knowledge conduct, and in

---

[4] Delaware courts are split on whether a defendant's knowledge of infringement must come from some source other than the original complaint to support a claim for indirect infringement. WSOU's amended complaint correctly states that "[s]everal Delaware courts have since rejected" the rule in *Aguirre* and quotes Delaware authority directly rejecting *Aguirre*.

13

the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff.

*Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d at 566. Delaware reached the same conclusion in *IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019), finding "no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint." Other courts, including courts in Delaware and the Eastern District of Texas, have reached the same conclusion.[5]

### B. WSOU adequately alleges intent for induced infringement.

Salesforce incorrectly characterizes WSOU's Complaint as offering nothing more than citations to Salesforce's promotional materials and a conclusory allegation of inducement. WSOU alleges significantly more. The Complaint sets out detailed allegations of direct infringement, identifying the accused products and functionalities. *See* Complaint, Count One ¶¶ 4-20. The Complaint further includes screenshots and citations to Salesforce's online user manuals, which contain instructions and demonstrations for how to use the accused functionalities in an infringing manner. *Id.*

The Complaint further alleges that Salesforce's customers directly infringe the patent by using the Accused Product in accordance with Salesforce's instructions and that Salesforce provides customers instructions on how to infringe the patent with its user manuals and advertising. *Id.* ¶¶ 21-22. This allegation, ***coupled*** with WSOU's detailed discussion identifying the accused functionalities in preceding paragraphs of the Complaint and the screenshots of advertisements and instructions on Salesforce's website, is more than enough to give rise to a reasonable inference

---

[5] *See also Firstface Co., Ltd. v. Apple, Inc.*, 2019 WL 1102374, *1-2 (N.D. Cal. 2019); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–57 (Fed. Cir. 2018); *Tierra Intelectual Borinquen, Inc. v. ASUS Computer International, Inc.,* 2014 WL 1233040, *2 (E.D. Tex. 2014); *Telecomm Innovations, LLC v. Ricoh Co.*, 966 F.Supp.2d 390, 393 (D. Del. 2013); *E.I Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773, 2012 WL 4511258, at *6 (D. Del. Sept. 28, 2012).

that Salesforce intended to induce. *See Maxell Ltd. v. Apple Inc.*, 5:19-CV-00036-RWS, 2019 WL 7905455, at *4 (E.D. Tex. Oct. 23, 2019) ("The preceding discussion identifying the accused functionalities and the screenshots of advertisements and instructions on Apple's website, coupled with this allegation, are more than enough to give rise to a reasonable inference that Apple intended to induce infringement.").

WSOU's pleadings are **at least** as detailed as those the Federal Circuit deemed sufficient to defeat a motion to dismiss. *Nalco Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (denying motion to dismiss where pleadings alleged defendants inducing actions included "providing instructions, support, and technical assistance for the use of the [accused instrumentality]."); *see also Script Security Solutions L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 936 (E.D. Tex. 2016) (denying a 12(b)(6) motion to dismiss allegations of induced infringement where "the defendants induced customers to infringe the patents by instructing them in advertising and promotion to use the accused products in an infringing way"); *Canon, Inc. v. TCL Electronics Holdings Ltd.*, No. 2:18-CV-00546-JRG, 2020 WL 1478356, *5-*6 (E.D. Tex. Mar. 25, 2020) (denying motion to dismiss inducing and contributory infringement claims despite the lack of specifics in how the material the accused infringers disseminated in connection with the accused product encouraged infringement); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. Sept. 27, 2019) (denying motion to dismiss because complaint contained general allegations that the end-user's of the accused software product were the direct infringers and that the accused infringer through its advertising and instruction manuals encouraged the end user to use the product in an infringing manner).

Salesforce's reliance on *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-752-JRG-JDL, 2015 WL 12850550 (E.D. Tex. Jul. 15, 2015) is misplaced. There, the complaint failed to allege "any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner[.]" *Id.* at 4. The Eastern District of Texas refused to apply *Core Wireless* in *Maxell* because the complaint in *Maxell* – like WSOU's complaint – "set[] out in detail allegations of direct

infringement, identifying the accused functionalities and accused devices," included "screen-shots and descriptions of Apple's online user manuals and advertisements," and coupled these allegations with an allegation that Apple induced its customers to infringe. *Maxell*, 2019 WL 7905455 at *4. In doing so, *Maxell* reemphasized the recognition in *Core Wireless* "that 'the provision of instructions by an accused infringer may indicate specific intent to induce infringement.'" *Id*. (quoting *Core Wireless*, 2015 WL 12850550, Slip Op. at *4). Other courts have adopted similar reasoning to *Maxell*.[6]

Salesforce's reliance on *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 13-cv-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014) is likewise misplaced. The complaint at issue in *Affinity* did not set out in detail the accused functionality of an accused product, it did not include screenshots and descriptions of Blackberry's user manuals and advertisements, and it did not incorporate by reference detailed infringement contentions containing detailed references to Blackberry's user manuals and advertisement. Unlike here, the complaint there contained only a bald assertion of induced infringement.

Salesforce cannot reasonably argue that the *extraordinary* level of detail provided by WSOU fails to provide sufficient notice as to which functionalities stand accused of infringement or how Salesforce's manuals and advertisements—which include detailed instructions for configuring the accused functionalities to perform in an infringing manner—induce its users to directly infringe.

---

[6] *See, e.g., Nomadix, Inc. v. Hospitality Core Services LLC*, 2015 WL 1525537, *3 (C.D. Cal. April 3, 2015) (denying motion to dismiss inducing infringement for allegedly not sufficiently pleading intent since the patentee's allegations that the accused infringer provided instructions to use its product in an infringing manner was sufficient); *U.S. Water Services, Inc. v. Novozymes A/S*, 2014 WL 2604997, *4–*6 (W.D. Wis. June 11, 2014) (denying motion to dismiss indirect infringement claims in view of allegations that the accused infringers "instructed potential customers to buy their product and use it in the same way as plaintiffs' patented methods"); *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 393–94 (D. Del. Aug. 6, 2013) (finding it sufficient that "plaintiff at bar alleges that defendants provided technical support and instructions to their customers on how to use products in such a way as to infringe the patented invention").

### C. WSOU adequately alleges contributory infringement.

Salesforce's argument concerning contributory infringement is similarly defective. Salesforce relies on *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018), a case involving a complaint with barebones allegations of infringement[7] that bear no resemblance to WSOU's complaint.

A well-pled allegation addressed to the lack of substantial non-infringing uses is sufficient to satisfy the knowledge element of contributory infringement." *Motiva*, 408 F. Supp. 3d at 834. "Requiring [a patentee] to prove that [the accused infringer]'s software component only has a single use—instead of simply alleging as much—would 'effectively require[ ] [the patentee to prove, pre-discovery, the facts necessary to win at trial,'" and the law does not require this. *Id*. at 836 n.6 (citation omitted). Here, WSOU's detailed allegations outlining Salesforce's direct infringement and identifying examples of infringing features and components of the accused products, coupled with WSOU's well-pled allegation addressed to the lack of a substantial non-infringing use, is more than enough to plausibly claim contributory infringement.

### CONCLUSION

For the foregoing reasons, Salesforce's motion should be denied in its entirety and with prejudice. Although Salesforce's motion should be denied outright, if the Court is inclined to grant any part of the motion, WSOU respectfully requests that the Court allow WSOU to amend its Complaint. Fed. R. Civ. P. 15(a)(2) (providing that leave to amend should be freely given when justice so requires.).

---

[7] Inhale's claim for infringement, stated ***in its entirety***: "Upon information and belief, Defendant has infringed and continues to infringe ... indirectly through contributory ... infringement, claim 1 or 2 of the ['563] Patent by manufacturing, importing, offering for sale, and selling in the United States the GRAV Grinder." *Inhale, Inc v. Gravitron, LLC*, 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) ("Beyond this conclusion, Inhale's complaint lacks any factual allegations permitting the court to reasonably infer the GRAV Grinder is a component of a patented invention, is especially made for use in infringing the '563 Patent, and has no substantial non-infringing use.").

Dated: June 21, 2021                    Respectfully submitted,

*/s/ Ryan S. Loveless*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record via electronic case filing in accordance with the Federal Rules of Civil Procedure on June 21, 2021.

*/s/ Ryan S. Loveless*
Ryan S. Loveless
