**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>             Plaintiff,<br><br>v.<br><br>SALESFORCE.COM, INC.<br><br>             Defendant. | Civil Action No.:  6:20-cv-1167-ADA<br><br>**JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF DEFENDANT SALESFORCE'S
<u>RULE 12(b)(6) MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | WSOU FAILS TO SHOW THAT THE '827 PATENT IS DIRECTED TO PATENT-ELIGIBLE SUBJECT MATTER | 1 |
| | A. Claim Construction Is Unnecessary To Find The Asserted Claims Invalid | 1 |
| | B. *Alice* Step 1: Claim 1 Is Directed To An Abstract Idea | 2 |
| | C. *Alice* Step 2: The '827 Patent Recites Only Generic Steps And Components | 5 |
| | D. The Remaining Asserted Claims Are Also Patent Ineligible | 6 |
| II. | WSOU'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED | 7 |
| | A. WSOU Failed To Plead the Required Pre-Suit Knowledge | 7 |
| | B. WSOU Failed To Plead Specific Intent | 8 |
| | C. WSOU Failed To Plead Substantial Non-Infringing Use | 10 |

## I. WSOU FAILS TO SHOW THAT THE '827 PATENT IS DIRECTED TO PATENT-ELIGIBLE SUBJECT MATTER

### A. Claim Construction Is Unnecessary To Find The Asserted Claims Invalid

Contrary to the assertions in WSOU's Response, the Federal Circuit has repeatedly affirmed that patent eligibility may be decided at the pleading stage and/or without claim construction when the patentee fails to (i) propose the construction of any claim terms and (ii) then explain how the proposed construction could affect the §101 analysis – as WSOU has failed to do here. *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020)(holding that resolution of patent eligibility prior to claim construction at the pleading stage is proper where patentee has not "identified a single claim term that it believes requires construction before [] eligibility [] can be decided, much less how [] construction could affect the analysis."); *Cleveland Clinic Found. v. True Health Diagnostics* LLC, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *accord Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525 (Fed. Cir. 2021); *see also* Mot. at 9-10 & n.1.[1]  Accordingly, WSOU's argument that requiring such a showing of a party that claims resolution of a §101 motion at the pleading stage amounts to an improper "burden-shifting" (Resp. at 4-5) is thus contrary to binding Federal Circuit precedent (and not simply "non-precedential authority" as WSOU mistakenly contends (Resp. at 4)).

WSOU never identifies any terms for construction, much less proposed claim constructions, that would provide a basis to deny Salesforce's motion as premature.  Accordingly, on its face, WSOU's response provides no support for the proposition that resolution of the pending Motion

---

[1] WSOU notably fails to address a single one of the Federal Circuit cases cited in Salesforce's Motion, including *Cyberphone*, or to distinguish any of the other cases cited by Salesforce other than this "non-precedential" claim.  Moreover, the *MyMail* and *Bancorp* cases on which WSOU relies are in fact consistent with this principle:  in those cases, the Federal Circuit found that the patentees had identified specific terms requiring construction and explained how the proposed constructions could affect the §101 analysis*. See MyMail Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379-80 (Fed. Cir. 2019); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).

1

should be delayed until claim construction.

Instead, WSOU only points to the fact that Salesforce asserts (i) "the request-processing method claimed in the patent … can be performed using pen and paper" and (ii) step 1 recites "generic functions." Resp at 4. Notably, WSOU does not in fact dispute these assertions. Moreover, as set forth in detail in Salesforce's Motion at 4-9 and in Sections I.B-C below, these assertions are amply supported by the record, including in particular the pleadings and the face of the patent itself, as well as relevant authority.[2] To the extent that WSOU implies that Salesforce's Motion is premature given that fact discovery has not opened, WSOU makes no showing whatsoever as to what discovery WSOU would seek or provide that would have any bearing on the issues in this motion – which likewise is fatal to its position.

In light of WSOU's failure to identify any terms that in fact would need construction and explain how this bears on the 101 analysis, or identify any particular evidence or discovery that would bear on the 101 analysis, this Court's stated reason for waiting to determine §101 eligibility until after claim construction in the *Slyce* case—*i.e.*, efficiency—actually favors the Court deciding the '827 patent's §101 eligibility before claim construction. *See Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 721-22 (W.D. Tex. 2014), *aff'd* 621 F. App'x 660 (Fed. Cir. 2015).

B.   *Alice* **Step 1:  Claim 1 Is Directed To An Abstract Idea**

WSOU's claim that Salesforce's identification of the abstract idea of claim 1 as "matching information in different databases" somehow "overgeneralizes" the subject matter of claim 1 is incorrect. First, the extent that WSOU implies that the abstract idea must recite each and every

---

[2] WSOU relies on *Berkheimer* and *eCeipt* for the proposition that any time a court must consider "[w]hether something is well-understood, routine, or conventional" as required under Alice Step 2, this necessarily dictates that a motion to dismiss under § 101 must be denied. *See* Resp. at 4, 10.  This is not the law: the Federal Circuit regularly affirms findings of patent ineligibility on motions to dismiss, even after *Berkheimer*. *See, e.g., ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 763 (Fed. Cir. 2019).

limitation of the claim under consideration (Resp. at 6-8), that is not the appropriate test: "[t]he 'abstract idea' step of the inquiry … look[s] at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter," *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).

The abstract idea of matching information in different databases to which the claims are directed in fact accounts for the claims' character as a whole, as outlined in Salesforce's motion. Mot. at 4-7. WSOU's primary argument in support of its "overgeneralization" claim is that the preamble of claim 1 further recites "performed by a Subscriber Profile Repository (SPR) for determining a unique subscriber record from a set of subscription identifiers." *See* Resp at 6. However, these elements are expressly encompassed with the abstract idea, and as WSOU ignores, are directly addressed in Salesforce's motion. *See, e.g.*, Mot. at 4-6, 8.

Indeed, the claim language and specification passages WSOU emphasizes demonstrate as much. The preamble of claim 1 recites "[a] method *performed by a Subscriber Profile Repository (SPR)* for determining *a unique subscriber record* from *a set of subscription identifiers*." '827 patent at 11:51-53. The specification similarly describes the aim of the alleged invention as "provid[ing] … [a] method for processing requests to the SPR." '827 patent at 1:57-58. But processing requests by determining information ("a unique subscriber record") from a database of information ("a set of subscription identifiers") are mere steps required to match that information with information in another database. Thus, each of the claimed elements is a step in matching information in different databases, demonstrating that the claim as a whole focuses on matching information in different databases as the claimed advance. But this is just an abstract idea. And, even if the specific claimed elements recited in claim 1 supported the claim's novelty—they do not—"a claim for a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

WSOU also argues that claim 1 is not abstract because it is directed to "*technical improvements* in network computing capabilities, particularly in the context of an improved Subscriber Profile Repository (SPR)" and thus analogous to patent claims that the Federal Circuit found to be not abstract. Resp. at 7-8. But this argument also fails. Leaving aside that the claim language cited by WSOU to describe this "improved [SPR]" reveals that it does so merely by processing and matching information, WSOU fails to cite any part of the '827 patent or the Complaint that explains *how* this "improved [SPR]" improves network computing capabilities. This failure distinguishes the cases cited by WSOU, where the Federal Circuit found that the claims at issue were not directed to abstract ideas because they recited *specific* improvements in computer functionality such as "a self-referential table" enabling "faster searching of data" and "more effective storage of data" (*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1333 (Fed. Cir. 2016)), "an enhanced computer memory system" that "offers faster access to main memory and increases system performance" (*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1256, 1259 (Fed. Cir. 2017)), and "improv[ed] security" that reduces "vulnerability of license-authorization software to hacking" (*Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018)). Finally, WSOU's assertion that claim 1 is not abstract because it is directed to "*technical improvements* in network computing capabilities, particularly in the context of an improved Subscriber Profile Respository (SPR)" also misses the mark. Moreover, to the extent WSOU is emphasizing the claimed SPR as opposed to databases more generally, it is black letter law that claim language "restrict[ing] the invention's field of use … do[es] not render an otherwise abstract concept any less abstract." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017); *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

Nor does WSOU's attempt to distinguish *Erie* (Resp. at 9) rebut Salesforce's showing that claim 1 and the patent-ineligible claim of *Erie* are very similar and both directed to abstract ideas

4

because claim 1 similarly "use[s] an index to locate desired information in a computer database." *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1325 (Fed Cir. 2017).

      C.      *Alice* **Step 2:  The '827 Patent Recites Only Generic Steps And Components**

As a preliminary matter, WSOU never disputes that the claims of the '827 patent all recite generic steps and components, as the specification itself concedes – which alone is fatal to WSOU's response. *See* Mot. at 7-9, Resp. at 9-11.  Instead, relying on *eCeipt LLC v. Homegoods*[3], WSOU argues that the disclosure of the '827 patent "teaches example technical solutions to previously unsolved problems in the art," such as the failure to "specify any details associated with the Sp reference point," or "specify various relations between data and to provide a system capable of interoperability between network devices," and that this somehow results in an inventive concept.  Resp. at 10.  However, these limitations reflect nothing more than the abstract concept shown in step one—matching information, specifying various relationships between data, in different databases, with systems capable of interoperability between network devices.  *See* Mot. at 4-9.  As a matter of law, however, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).  Moreover, WSOU fails to cite any part of the '827 patent discussing how the alleged invention addresses these alleged deficiencies, let alone discuss how the actual claim language reflects an inventive concept.  Resp. at 10.

As WSOU's own recitation of the claim language in this context shows (Resp. at 10-11), the claims specify these relations simply by matching information in different databases. Specifically, WSOU highlights "determining that the subscriber record is the unique subscriber

---

[3] Unlike here, the plaintiff in *eCeipt* affirmatively demonstrated that each claim of the asserted patent "contain[ed] an inventive concept."  No. W-19-CV-00032-ADA, 2019 WL 10302271, at *6-7 (W.D. Tex. May 20, 2019).

5

record when each subscription identifier that matches the subscriber record matches an identical subscriber record." *See id.* Simply matching a subscriber record to an identical subscriber record as in this limitation fully embodies the ineligible concept of matching information in different databases and as such does not qualify as an inventive concept.

Finally, WSOU asserts that claim 1 is directed to an "ordered combination" by relying on claim 1 reciting that, after "the 'receiving' and 'determining' steps, the body of claim 1 further referrers back to the preamble by reciting an additional 'determining' step." Resp. at 10-11. However, this additional "determining" step merely recites determining that the subscriber record is the unique matching subscriber record. Again, this is nothing more than a restatement of the abstract idea (determining that the records actually match), and does not yield an inventive concept. *See* Mot. at 4-7; *Braemar Mfg., LLC*, 816 F. App'x at 470.

### D.     The Remaining Asserted Claims[4] Are Also Patent Ineligible

WSOU's arguments regarding the other claims also fail. To begin, WSOU merely repeats the arguments it makes with respect to claim 1 (*see* Resp. at 11-12), which fail as explained above.

WSOU points to several additional components in the remaining claims: "an interface," "a subscriber record database," "a subscriber record cache," and "a search manager." But WSOU fails to rebut that the patent describes all of these as well-known, generic components (*see* Mot. at 8) and that such generic computer components do not pass muster under *Alice*. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). Under Federal Circuit precedent and in view of the specification's admissions, none of these can constitute an inventive concept—nor do they even raise a factual dispute. *See Aatrix Software, Inc. v. Green Shades*

---

[4]   In its initial infringement contentions, WSOU has asserted infringement of claims 1, 6, 7, 14, 19, and 20 by Salesforce. Thus, the Court has subject matter jurisdiction to determine whether these claims are directed to patent-eligible subject matter under 35 U.S.C. § 101. *See Ameranth, Inc. v. Domino's Pizza LLC*, 792 F. App'x 780, 783-84 (Fed. Cir. 2019).

*Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) (Moore, J., concurring in denial of rehearing *en banc*) ("In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute."). WSOU's assertions that "each dependent claim requires individual scrutiny of each limitation individually, and as an ordered combination with each other limitation" fail given that WSOU nowhere suggests what claim or limitation might include an inventive concept.

## II.     WSOU'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

### A.     WSOU Failed To Plead the Required Pre-Suit Knowledge

WSOU does not contest that it failed to plead pre-suit knowledge. Resp. at 12. This Court has *routinely* held that allegations of indirect infringement require pre-suit knowledge. *See, e.g., Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Dkt. 54 (W.D. Tex. Feb. 20, 2020); *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-207, 2019 WL 3940952 (W.D. Tex. July 26, 2019), *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1:18-cv-309, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018); *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-cv-00029, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020). In light of clear precedent, the onus is on WSOU to explain why the Court should deviate from its standard practice of dismissing these claims. *WSOU Invs., LLC v. Dell Techs., Inc.*, No. 6:20-cv-478, Dkt. 73 at 76:1-11 (W.D. Tex. Dec. 22, 2020).[5] Regardless of what other district judges have decided,[6] the rulings of this Court are

---

[5]  WSOU agreed to exactly this procedure less than a year ago in another case before this Court. *See WSOU Invs., LLC v. Dell Techs., Inc.*, No. 6:20-cv-478, Dkt. 73 at 73:22-76:13 (stating "I think we would be fine with your normal practice")

[6]  WSOU bases a lot of its presuit knowledge opposition discussing Delaware and other case law. This entire discussion is irrelevant. It does not address the law of this District. Contrary to WSOU's argument, Salesforce does not rely on *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011). Resp. at 13. WSOU's citation to allegations in the "amended complaint" also make no sense, since no amended complaint has been filed in this case, and the language it quotes is not found in its original Complaint. Resp. at 13 n.3.

clear: pre-suit knowledge is required for indirect infringement.

WSOU's reliance on *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed. Cir. 2012) for the proposition that a party may seek to pursue claims that accrue during the pendency of a lawsuit is misplaced. **First,** other Federal Circuit decisions confirm that allegations of pre-suit knowledge are, in fact, required in order to allege indirect infringement. *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018); *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1380 (Fed. Cir. 2013). **Second,** this Court has already rejected precisely this same argument made earlier by WSOU. *See WSOU Invs., LLC v. Dell Techs., Inc.*, No. 6:20-cv-478, Dkt. 55 at 3, 5-6, 8, Dkt. 73 at 76:14-77:7. **Third**, *Aspex Eyewear* addressed the scope of res judicata, and has nothing to do with the question of whether the filing of a complaint can create a cause of action. *Aspex Eyewear*, 672 F.3d at 1345. Thus, this Court's precedent is fully consistent with Federal Circuit precedent and with the knowledge requirement itself. *See Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012).

B. **WSOU Failed To Plead Specific Intent**

WSOU attempts to salvage its induced infringement allegations by exaggerating the allegations actually set forth in its Complaint. In truth, WSOU pled only that "Salesforce has actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '928 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products." Compl. ¶ 21. These allegations are strikingly similar to the dismissed allegations in *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, where Plaintiffs alleged that "Toyota and/or its distributors or

representatives have sold or otherwise provided Toyota automobiles with sound systems—including at least, for example, the Toyota Tundra—to third parties, such as Toyota's customers." No. W:13-CV-365, Dkt. 1, ¶¶ 36, 47 (Nov. 21, 2013); *see also id.* 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014).

WSOU's cited cases are distinguishable. In *Maxell Ltd. v. Apple, Inc.* In *Nalco Co. v. Chem-Mod, LLC*, the Court explicitly stated that "reference to instructions without allegations of which functionalities are at issue or facts identifying how those instructions direct customers to use the products in an infringing manner is insufficient" and that "generic statements regarding the provisions of instructions are insufficient." No. 5:19-CV-00036-RWS, 2019 WL 7905455, at *4 (E.D. Tex. Oct. 23, 2019). WSOU's allegations of induced infringement are precisely the kind of "general statements" which *Maxell* agreed are insufficient. In *Nalco Co. v. Chem-Mod, LLC*, the Federal Circuit confirmed that the plaintiff met the pleading standard by pleading, among other things, detailed allegations of specific and concrete actions taken by defendants to induce third parties. 883 F.3d 1337, 1356 (Fed. Cir. 2018); *see also* Case No. 1:14-cv-2510, Dkt. 108, ¶ 57 (N.D. Ill. Nov. 16, 2015); *see also id.* ¶¶ 56, 24-25, 42-44. 49-51, 53-54. WSOU's allegations are generic and paltry compared to those in *Nalco*.[7]

---

[7] WSOU's other cases fare no better. In *Script Security Solutions LLC v. Amazon.com, Inc.*, the plaintiffs alleged intent by pleading "that the defendants arranged to remain willfully blind to Script's patents by adopting a policy of not reviewing the patents of others." 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016); *see also Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-cv-546, 2020 WL 1478356, at *5-6 (E.D. Tex. Mar. 25, 2020) (relying on allegations that defendant took "active steps to encourage and facilitate" particular groups of direct infringers); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 825-26 (E.D. Tex. 2019) (emphasizing allegations that the defendant entered "into contractual relationships with others," and recognizing that the "normal and customary use of the accused products" would infringe (emphasis omitted)); *Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. CV 14-08256 DDP VBKX, 2015 WL 1525537, at *3 (C.D. Cal. Apr. 3, 2015) (finding sufficient allegations of "active steps" such as "provid[ing] instructions to end-users on how to obtain internet access and that Defendant trains hotel employees to assist guests to obtain network access" along with "allegations that obtaining such internet access requires the infringing use of the patented systems as a whole."); *Telecomm*

C.     **WSOU Failed To Plead Substantial Non-Infringing Use**

WSOU has failed to "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). WSOU's Complaint does not plausibly suggest that the Accused Products "could not be used 'for purposes *other than* infringement.'" *Artrip v. Ball Corp.,* 735 F. App'x 708, 713 (Fed. Cir. 2018) (citations omitted). In *Synopsys, Inc. v. ATopTech, Inc.*, the court dismissed claims of contributory infringement, finding that although "Plaintiff does not have to prove its claims at the pleading stage, Plaintiff has failed to raise the reasonable inference that Defendant's software has no substantial non-infringing uses." No. C 13-CV-02965 SC, 2013 WL 5770542, at *16 (N.D. Cal. Oct. 24, 20130); *see also Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, at *5 (E.D. Tex. June 3, 2015)")[8] The Court should reach the same outcome here, where WSOU's allegations are even more threadbare and generic as to pleading substantial non-infringing use. *See* Compl. ¶ 22. WSOU's complaint omits any similar allegation of specific design for infringing use and fails to satisfy this threshold for pleading contributory infringement.

---

*Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 395 (D. Del. 2013) (finding sufficient a complaint which "contains factual allegations, not mere legal elements, showing an intent to induce infringement"); *U.S. Water Servs., Inc. v. Novozymes A/S*, 25 F. Supp. 3d 1088, 1094 (W.D. Wis. 2014) (finding sufficient for plaintiffs to "allege that defendants knew of plaintiffs' technology and patents and that they instructed potential customers to buy their product and use it in the same way as plaintiffs' patented methods").

[8]  *Motiva Patents* does not compel a different outcome. *See* 408 F. Supp. 3d at 835 (finding sufficient allegation, absent here, that the accused products had "special features [related to motion sensors] that [were] specifically designed to be used in an infringing way" and could not be used in any other manner).

| | |
|---|---|
| Dated: July 19, 2021 | /s/ Scott L. Cole <br> Scott L. Cole <br> scottcole@quinnemanuel.com <br> Quinn Emanuel Urquhart & Sullivan, LLP <br> 201 West 5th Street <br> 11th Floor <br> Austin, TX 78701 <br> Telephone: (737) 667-6104 <br><br> Kevin P.B. Johnson <br> kevinjohnson@quinnemanuel.com <br> Todd Briggs <br> toddbriggs@quinnemanuel.com <br> Quinn Emanuel Urquhart & Sullivan, LLP <br> 555 Twin Dolphin Drive, 5th Floor <br> Redwood Shores, CA 94065 <br> Telephone: (650) 801-5000 <br> Facsimile: (650) 801-5100 <br><br> Sam Stake <br> samstake@quinnemanuel.com <br> Quinn Emanuel Urquhart & Sullivan, LLP <br> 50 California Street, Floor 22, <br> San Francisco CA 94111 <br> Telephone: (415) 875-6600 <br> Facsimile: (415) 875-6700 <br><br> *Counsel for Defendant salesforce.com, inc.* |

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 19, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: July 19, 2021                     */s/ Scott L. Cole*
                                                                Scott L. Cole